UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANTHONY BAUMAN | CIVIL ACTION |
| VERSUS | NO. 19-0423 |
| RIVER CORRECTION CENTER | SECTION "E"(4) |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

### I.     Factual and Procedural Background

The petitioner, Anthony Bauman ("Bauman"), is a convicted inmate incarcerated in the Morehouse Parish Jail in Bastrop, Louisiana.[2] On December 1, 2015, Bauman and co-defendant, Kevin Washington, were charged by Bill of Information in Orleans Parish with purse snatching.[3] On December 8, 2015, Bauman entered a plea of not guilty.[4] Washington eventually entered a plea of guilty to an amended charge of felony theft.[5]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 25

[3] St. Rec. Vol. 1 of 5, Bill of Information, 12/1/15 (as amended 6/1/16).

[4] St. Rec. Vol. 1 of 5, Minute Entry, 12/8/15.

[5] St. Rec. Vol. 1 of 5, Plea Minutes (Kevin Washington), 6/1/16.

The record reflects on November 6, 2015, around 10:00 p.m., Makenna Wilson and friends were at Razoo's Bar and Patio ("Razoo's") located in the 500 block of Bourbon Street.[6] They were in the bar for only a minute or two when they were approached by a waitress selling alcohol shots. Wilson purchased one shot for her friend and removed her wallet from her purse to pay with cash. She also removed her cell phone from her purse to take a picture. After she paid for the shot, she placed her wallet back into her purse, but left the purse open while she used her cell phone.

While she tried to convince her friend to drink the shot so she could take the picture, Bauman approached their group and stood directly next to Wilson. Although they did not know him, Bauman joined in cajoling Wilson's friend to drink the shot by cheering, "Come on, you can take it; do it! Do it!"[7] Her friend, nonetheless, refused to drink.

When Wilson placed the cell phone back into her purse she noticed that her wallet was missing. The incident was reported to a security guard and a bartender, who then reported it to the manager. Wilson then walked to the police station and made a written report.

The security video from Razoo's showed that, while Bauman distracted Wilson by joining in the group, his co-defendant Kevin Washington took Wilson's wallet out of her purse and then walked out of the bar and Bauman joined him. At the time, Wilson's wallet contained about $160 in cash, a credit card, a debit card, her identification, memorabilia she had collected over time, and a blank check signed by her boss.

---

[6]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal. *State v. Bauman*, 234 So.3d 1028, 1030-33 (La. App. 4th Cir. 2017); St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2017-KA-0659, pp. 2-7, 12/20/17.

[7]*Id.* at 1032. Bauman could be seen and heard on the security video shown to the jury at trial.

With the help of the security guard and security video from Razoo's, a Louisiana State Trooper soon arrested Bauman and Washington within a few blocks of the bar. The Trooper also seized $160 in cash from Bauman's pocket. The next day, an unknown woman from Florida found and returned some of Wilson's belongings including her identification, debit card, credit card, health insurance card, and bank account card.

On June 1, 2016, Bauman was tried before a six-person jury and found guilty as charged.[8] At a June 28, 2016 hearing, the state trial court denied Bauman's motions for arrest of judgment, new trial, and post-verdict judgment of acquittal to modify verdict to misdemeanor theft.[9] On June 29, 2016, the Trial Court sentenced Bauman to five years in prison at hard labor.[10] At the sentencing hearing, the State indicated its intent to file a multiple bill but no bill was filed.[11] On December 15, 2016, the state trial court denied Bauman's motion to reconsider the original sentence.[12]

On direct appeal, Bauman's appointed counsel asserted two errors:[13] (1) the Trial Court erred by denying the motion for a twelve person jury based on Bauman's potential exposure to a habitual offender sentence; and (2) the Trial Court erred by denying the request to include felony theft as a responsive verdict based on the evidence presented at trial. On December 20, 2017, the Louisiana Fourth Circuit affirmed the conviction finding the claims meritless.[14]

---

[8] St. Rec. Vol. 1 of 5, Trial Minutes, 6/1/16; St. Rec. Vol. 4 of 5, Trial Transcript, 6/1/16.

[9] St. Rec. Vol. 1 of 5, Motion for Post-Verdict Judgment of Acquittal, 6/27/16; Motion for New Trial, 6/27/16; Motion for Arrest of Judgment, 6/27/16.

[10] St. Rec. Vol. 1 of 5, Sentencing Minutes, 6/29/16; St. Rec. Vol. 4 of 5, Sentencing Transcript, 6/29/16.

[11] St. Rec. Vol. 4 of 5, Sentencing Transcript, pp. 4-5, 6/29/16; Minute Entry, 12/15/16; Minute Entry, 5/17/17.

[12] St. Rec. Vol. 1 of 5, Minute Entry, 12/15/16; Motion to Reconsider Sentence, 12/15/16.

[13] St. Rec. Vol. 3 of 5, Appeal Brief, 2017-KA-0659, 9/1/17.

[14] *Bauman*, 234 So.3d at 1028; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2017-KA-0659, 12/20/17.

Bauman's conviction was final under federal law thirty (30) days later, on January 19, 2018, when he did not timely seek review in the Louisiana Supreme Court. La. S. Ct. Rule X § 5; *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

On February 13, 2018, Bauman submitted a "supplemental" writ application to the Louisiana Supreme Court. The Court deemed the pleading to be his initial filing of a writ application because there was no record of any prior submissions from him.[15] On April 16, 2018, the Louisiana Supreme Court declined to consider Bauman's untimely filed writ application citing La. S. Ct. Rule X § 5.[16] The Court also denied Bauman's request for reconsideration on September 28, 2018.[17]

## II.    Federal Petition

On January 18, 2019, the clerk of this Court filed Bauman's federal petition for habeas corpus relief in which he asserts two grounds for relief:[18] (1) the state trial court erred when it denied the motion for a twelve-person jury; and (2) the state trial court erred when it refused to include felony theft as a responsive verdict.

The State filed a response in opposition asserting that Bauman failed to exhaust state court review of his claims and the claims are now in technical procedural default.[19]

---

[15] St. Rec. Vol. 5 of 5, La. S. Ct. Writ Application, 18-KH-332, 2/26/18 (dated 2/13/18); St. Rec. Vol. 3 of 5, La. S. Ct Letter, 2018-KH-332, 2/27/18.

[16] *State v. Bauman*, 239 So.3d 832 (La. 2018); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2018-KH-0332, 4/16/18.

[17] *State v. Bauman*, 253 So.3d 143 (La. 2018); St. Rec. Vol. 5 of 5, La. S. Ct. Order, 2018-KH-0332, 9/28/18; La. S. Ct. Request for Reconsideration, 18-KH-332, 4/27/18 (dated 4/19/18).

[18] Rec. Doc. No. 1-1, p.3.

[19] Rec. Doc. No. 29.

### III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[20] applies to Bauman's petition deemed filed in this Court under the mailbox rule on January 7, 2019.[21] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes that Bauman's petition was timely filed. However, the State asserts both failure to exhaust and technical procedural default based on Bauman's untimely filing of a Louisiana Supreme Court writ application following direct appeal. However, the record provided by the State contains evidence that arguably supports Bauman's claim that he attempted to submit a writ application to the Louisiana Supreme Court on or about January 4, 2018.[22] While this

---

[20]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[21]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Bauman's petition on January 18, 2019, when it was received and the case was opened on May 6, 2019, when Bauman paid the filing fee after denial of pauper status. Bauman dated his signature on the form petition and memorandum on January 7, 2019. This is the earliest date appearing in the record on which he could have handed his pleadings to prison officials for mailing to a federal court. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

[22]The record reflects that, on January 4, 2018, Bauman mailed an envelope addressed to the "Supreme Court of Louisiana" at "410 Royal Street." St. Rec. Vol. 3 of 5, Envelope Addressed to La. S. Ct., dated 1/4/18 (filed stamped by 4th Cir. 1/8/18). The Louisiana Fourth Circuit and the Louisiana Supreme Court occupy the same building at 400 Royal Street in New Orleans, Louisiana. *See* https://www.lasc.org/ and https://www.la4th.org/. The Louisiana Supreme Court uses that as its mailing address; however, the Louisiana Fourth Circuit uses 410 Royal Street. *Id*. Bauman's envelope apparently contained a writ application captioned for the Louisiana Supreme Court, signed and dated by Bauman on January 5, 2018. St. Rec. Vol. 3 of 5, Writ Application for "Louisiana Supreme Court," filed into 2017-KA-0659, 1/8/18 (dated by Bauman 1/5/18). The writ sought review of the Louisiana Fourth Circuit's

anomaly does not change the fact that the Louisiana Supreme Court declined review of Bauman's writ application as untimely, it gives this Court pause as to the equity of now barring Bauman from federal review of his unexhausted and technically barred claims.[23] For this reason, the Court exercises its authority to overlook Bauman's failure to exhaust to address the substance of his meritless claims. 28 U.S.C. § 2254(b)(2).

## IV. Standards of a Merits Review

The standard of review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). However, the AEDPA's deferential standard of review applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). When claims are not fully adjudicated on the merits in state court, or as here where there is no complete exhaustion, the deferential AEDPA standards of review do not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA *de novo* standards of review. *Id*. at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying *de novo* standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

---

December 20, 2017, direct appeal ruling. *Id*. Despite these indicators that the envelope and pleading were meant for the Louisiana Supreme Court, the envelope was received by the clerk of the Louisiana Fourth Circuit on January 8, 2018, and apparently filed into Bauman's already closed appellate record with no further action taken.

[23]A federal habeas petitioner may be excused from a technical procedural default if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997) (citing *Coleman Thompson*, 501 U.S. 722, 731-32 (1991)); *Amos v. Scott*, 61 F.3d 333, 338-39 (5th Cir. 1995). Cause exists if a petitioner demonstrates that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The question here would be which doomed Bauman's timely attempt to exhaust: (1) Bauman erred in addressing the mail to the Louisiana Supreme Court with the wrong street number; (2) a postal worker misdirected the mail to the other court in the same building; or (3) the clerk of the Louisiana Fourth Circuit erred in filing a document into a closed record when it was addressed and captioned for another court in the same building.

Therefore, the Court will consider Bauman's claims de novo, although they would fail under either standard. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (a claim that fails under a de novo review would necessarily fail under AEDPA's deferential standard of review).

## V.    Denial of Motion for Twelve Person Jury

Bauman claims that the state trial court erred and violated his constitutional rights when it denied his motion to seat a twelve person jury rather than the six person jury used at his trial. He urges that the state trial court knew he could be facing a multiple bill, which should have entitled him to the larger jury despite other state law allowing for six jurors. The State contends that this is not a cognizable federal habeas claim because it is based on application of state law.

As background, the Louisiana Fourth Circuit on direct appeal rejected Bauman's claim citing La. Const. art. 1 §17(A) and La. Code Crim. P. art. 782(A). Specifically, the Court concluded that Louisiana law required only a six person jury for a crime, like purse snatching, that carried a minimum sentence of more than six months in prison to be served with or without hard labor.[24] At the time, the minimum sentence for purse snatching was imprisonment for not less than two years nor more than twenty years to be served with or without hard labor.[25] In addition, the Court further noted that the possibility of a habitual offender proceeding was irrelevant to determining the size of the petit jury, because enhancement proceedings are separate from the trial on the underlying conviction.[26]

On habeas review, a federal court is limited to deciding whether a conviction violated the "Constitution, laws, or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A federal court may not grant habeas relief based on an alleged error in

---

[24] *Bauman*, 234 So.3d at 1036; St. Rec. Vol. 3 of 5, 4th Cir. Opinion, 2017-KA-0659, pp. 11-12, 12/20/17.
[25] *Id.* at 1037 (citing La. Rev. Stat. Ann. § 14:65.1(B)).
[26] *Id.*

7

the interpretation or application of state law. *Estelle*, 502 U.S. at 68; *see also Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law") (citation and quotation omitted); *Swarthout v. Cooke*, 562 U.S. 216, 218 (2011) (federal habeas review does not lie for errors of state law). It is well settled that the state courts are the final arbiters of state law. *See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Ins. Co.*, 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); *Charles v. Thaler*, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions are state law.").

This Court cannot entertain Bauman's claim that the state courts wrongly interpreted or applied state law on the composition of his jury. Modes of trial are matters of state law and "[w]hether the state followed its own procedure is not the concern of a federal habeas court." *Manning v. Warden, Louisiana State Penitentiary*, 786 F.2d 710, 712 (5th Cir. 1986); *Dahlem v. Poret*, No. 16-11835, 2017 WL 3721518, at *5 (E.D. La. Aug. 28, 2017) ("[T]o the extent Petitioner argues that his trial by a six-person jury violated state law, this claim is not cognizable on federal habeas review.") Instead, federal habeas review may only consider constitutional violations and noncompliance with federal law as interpreted by the United States Supreme Court. *See Swarthout*, 562 U.S. at 219. However, even if Bauman invoked the Due Process Clause, his claim is meritless.

First, Bauman has not pointed to any error by the state courts that rendered his trial fundamentally unfair. The Louisiana courts resolved that the six person jury was statutorily provided for in his case and the potential for a habitual offender proceeding did not weigh into the

application of the statute. Instead, Louisiana law required to the state trial court to compose a jury based on the sentencing exposure Bauman faced for purse snatching, and that was six persons. With no error by the state courts, Bauman cannot prove that a denial of due process occurred.

Second, the United States Supreme Court has expressly rejected the contention that the Sixth Amendment requires a certain number of jurors or that trials tried to twelve jurors are necessarily fairer than those tried to six:

> The purpose of the jury trial . . . is to prevent oppression by the Government. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. Given this purpose, the essential feature of a jury obviously lies in the interposition between the accused and his accuser of the commonsense judgment of a group of laymen, and in the community participation and shared responsibility that results from that group's determination of guilt or innocence. The performance of this role is not a function of the particular number of the body that makes up the jury. To be sure, the number should probably be large enough to promote group deliberation, free from outside attempts at intimidation, and to provide a fair possibility for obtaining a representatives cross-section of the community. But we find little reason to think that these goals are in any meaningful sense less likely to be achieved when the jury numbers six, than when it numbers 12 - particularly if the requirement of unanimity is retained. And, certainly the reliability of the jury as a factfinder hardly seems likely to be a function of its size.

*Williams v. Florida*, 399 U.S. 78, 100-01 (1970) (citation, footnote, and quotation marks omitted).

The reliance on a six person jury to try Bauman's case did not violate federal law or deny him a fair trial. For these reasons, Bauman has failed to point to a cognizable federal claim arising from the size of the jury required under state law for his criminal trial. His request for federal habeas relief must be denied.

**VI.     Denial of Motion to Include Responsive Verdict**

Bauman argues that the state trial court erred when it denied his motion to include felony theft as a responsive verdict at his trial. Bauman argues that because of the circumstances of the

crime, there was no "snatching" of the purse and he should have been charged with theft. Therefore, he contends, felony theft should have been included as a responsive verdict.

As discussed previously, to the extent Bauman challenges the state trial court's ruling on a pretrial motion, he has failed to state a cognizable federal habeas claim. *Accord Swarthout*, 562 U.S. at 219; *Wilkerson*, 16 F.3d at 67. This federal court is limited to review of claims challenging the constitutionality of a conviction under federal law. *Estelle*, 502 U.S. at 68. Bauman's claim again fails to make such a federal claim.

The question of whether an offense is a lesser included offense or responsive verdict generally is a question of state law. *Ortega v. Stephens*, 784 F.3d 250, 253 n.3 (5th Cir. 2015). Even when a state court's instructions to a jury on such matters is allegedly incorrect under state law there is no basis for federal habeas relief. *See Estelle*, 502 U.S. at 71-72; *see also*, *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) ("Improper jury instructions in state criminal trials do not generally form the basis for federal relief."). The proper consideration under federal habeas law is whether a state law error, if proven, caused "prejudice of constitutional magnitude," such that the error "by itself so infected the entire trial that the resulting conviction violates due process." *Galvan*, 293 F.3d at 764-65 (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)); *Gilmore v. Taylor*, 508 U.S. 333, 342-43 (1993).

As the state courts resolved, Bauman has not set forth an error under state law in failing to include felony theft as a responsive verdict. Louisiana law recognizes that, because the elements of theft are fully encompassed in and a main component of a purse snatching, misdemeanor theft must be included as a responsive verdict under La. Code Crim. P. art. 814 and 815(2). *State v. Marts*, 765 So.3d 438, 444-45 (La. App. 4th Cir. 2000). Felony theft, however, is not necessarily responsive, because purse snatching does not require proof of a $750 minimum value of items

10

stolen that is required to prove a felony theft. *Bauman*, 234 So.2d at 1039-40. The State would have to have evidence to establish the felony-level value before felony theft is a responsive verdict to a purse snatching charge. *See Marts*, 765 So.3d at 445 n.3.

In Bauman's case, "theft" was included as a responsive verdict. *Bauman*, at 1039. However, "felony theft" properly was not included because, as Bauman readily concedes, the State proved only a value of $160 in cash and other unvalued personal items. There was no evidence to prove or establish that the stolen items exceeded $750 in value. In such a case, Louisiana law would not have required or even considered felony theft to be responsive to purse snatching in his case. *Accord Marts*, 765 So.3d at 444-45; *see also State v. Newton*, 973 So.2d 916, 919 n.2 (La. App. 2d Cir. 2007) ("If there is no evidence reasonably supporting a verdict, then such a verdict may be excluded as a possible responsive verdict."); *State v. Taylor*, 774 So.2d 379, 386-87 (La. App. 2d Cir. 2000), *writ denied*, 803 So.2d 984 (La. 2001) (same).

Furthermore, the United States Supreme Court has not declared due process to require a state trial court to instruct a jury on lesser included offenses in a non-capital case. *See Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988) (citing *Alexander v. McCotter*, 775 F.2d 595, at 595) (finding no federal habeas issue arising from failure to include a statutorily allowed responsive verdict); *Easter v. Estelle*, 609 F.2d 756, 758 (5th Cir. 1980). Simply stated, in non-capital cases like Bauman's, a state court's failure to include a responsive verdict does not violate federal law or provide a basis for federal habeas relief. *Valles*, 835 F.2d at 127; *see Weatherspoon v. Cain*, No. 10-4500, 2011 WL 4351397, at *25 (E.D. La. July 8, 2011), *report adopted*, 2011 WL 4063611 (E.D. La. Sept. 13, 2011); *Jason v. Cain*, No. 04-0882, 2006 WL 2949523, at *14 (E.D. La. Oct. 13, 2006) ("The failure to include a responsive verdict in a noncapital case does not violate federal law.")

In addition, Bauman has not alleged that the responsive verdicts (including theft) given to his jury were other than accurate and appropriate under state law. Because the responsive verdicts and related instructions were proper, due process is not implicated. *Clark v. Maggio*, 737 F.2d 471, 474 (5th Cir. 1984). For these reasons, Bauman's claim that the state trial court erred when it declined to include felony theft as a responsive verdict fails to state a cognizable federal claim that would entitled him to habeas relief.

## VII. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Bauman's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[27]

New Orleans, Louisiana, this 2nd day of March, 2020.

KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[27] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.